UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LORI BAZINETT, individually and on behalf
of all other similarly situated,

         Plaintiff,

 vs.                 1:23-CV-790
                      (MAD/ML)
PREGIS LLC,

         Defendant.
_____

APPEARANCES:           OF COUNSEL:

**BURSOR & FISHER P.A.**       YITZCHAK KOPEL, ESQ.
1330 Avenue of the Americas
32nd Floor
New York, New York 10019
Attorney for Plaintiff

**OGLETREE DEAKINS**        KELLY M. CARDIN, ESQ.
599 Lexington Avenue         CAITLIN L. O'FALLON, ESQ.
Ste 17th Floor
New York, New York 10022
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

   On April 10, 2023, Plaintiff filed a complaint in the United States District Court for the Northern District of Illinois alleging violations of New York Labor Law ("NYLL") for Defendant's failure to timely pay wages. *See* Dkt. No. 1. The parties moved to transfer the case to this Court, *see* Dkt. No. 19, which the Northern District of Illinois granted. *See* Dkt. No. 22. The case was transferred to this Court on June 27, 2023. *See* Dkt. No. 23. Presently before the

1

Court is Defendant's motion to dismiss Plaintiff's complaint for lack of standing and failure to state a claim. *See* Dkt. Nos. 14, 15. Plaintiff responded in opposition, *see* Dkt. No. 28, and Defendant replied. *See* Dkt. No. 31. Plaintiff subsequently submitted six notices of supplemental authority. *See* Dkt. Nos. 32, 33, 34, 35, 36, 38. Defendant submitted one notice of supplemental authority. *See* Dkt. No. 37.

For the following reasons, Defendant's motion to dismiss is denied.

## II. BACKGROUND

Plaintiff resides in Lake Luzerne, New York. *See* Dkt. No. 1 at ¶ 11. Defendant is a Delaware limited liability company with its principal place of business in Deerfield, Illinois. *See id.* at ¶ 10. Defendant manufactures flexible packaging and protective packaging solutions. *See id.* Plaintiff was employed by Defendant from April to October 2021 as a shipper/receiver at Defendant's location in Glens Falls, New York. *See id.* at ¶ 11. Plaintiff alleges that more than twenty-five percent of her job responsibilities "included manual labor, including tasks such as filling shipment loads into trailers, picking orders in the warehouse, processing and tagging orders, loading and unloading incoming and outgoing shuttles to the warehouse, and operating a forklift." *Id.* She contends that she was paid every other week, which deprived her of the money owed to her during "half of each biweekly pay period." *Id.* Plaintiff asserts one cause of action, under New York Labor Law section 191, for failure to timely pay wages because "she could not invest, earn interest on, or otherwise use the[] monies that were rightfully hers." *See id.* at ¶¶ 11, 19-22. She seeks declaratory relief, liquidated damages, and attorneys' fees and costs. *See id.* at 5.

New York Labor Law section 191 states, in relevant part: "A manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned."  N.Y. Lab. L. § 191(1)(a)(i).  New York Labor Law section 198 provides:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest . . . and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

N.Y. Lab. L. § 198(1-a).

Defendant moves to dismiss Plaintiff's complaint, arguing that New York Labor Law section 191 does not provide for a private right of action.  *See* Dkt. No. 15 at 4.  Defendant also argues that Plaintiff cannot establish standing because she has not alleged an injury in fact.  *See id.* at 6.

### III. DISCUSSION

**A.     Standard of Review**

"'A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction.'"  *Dutrow v. N.Y.S. Gaming Commission*, No. 13-CV-996, 2014 WL 11370355, *3 (E.D.N.Y. July 29, 2014), *aff'd*, 607 Fed. Appx. 56 (2d Cir. 2015) (quoting *Magee v. Nassau Cnty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)); *see also Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citation omitted) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([*i.e.*,]

subject-matter jurisdiction)"). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

When subject matter jurisdiction is challenged, a "[p]laintiff[] bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)). In reviewing a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). The Court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [ ] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* (citations omitted).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v.*

4

*Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* FED. R. CIV. P. 8(a)(2), with factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570.

**B.     Standing**

Plaintiff alleges a violation of New York Labor Law § 191 because she was paid every other week rather than on a weekly basis as a manual laborer. *See* Dkt. No. 1 at ¶¶ 5, 11. Defendant argues that Plaintiff's complaint should be dismissed for lack of standing because a statutory violation is insufficient to establish constitutional standing and "Plaintiff fails to plead that she was uncompensated or under-compensated." Dkt. No. 15 at 7. Plaintiff argues that she "has alleged concrete, economic harm: the loss of time value of money owed to her." Dkt. No. 28 at 3 (citing Dkt. No. 1 at ¶ 11).

"Article III, Section 2 of the Constitution limits the subject-matter jurisdiction of the federal courts to 'Cases' and 'Controversies.'" *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211

(2d Cir. 2020) (citing *Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019)).  "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quotation and footnote omitted).

The Supreme Court has "established that the 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61).

The instant motion concerns only the injury-in-fact component of standing.  To establish an injury in fact, a plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560).  "To be 'concrete,' an injury 'must actually exist,' . . . that is, it must be 'real, and not abstract.'" *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016) (quotation omitted).

In its motion to dismiss, Defendant correctly states that the Supreme Court and Second Circuit have held "that in suits for damages[,] plaintiffs cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm: 'No concrete harm; no standing.'" *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021)); *see also* Dkt. No. 15 at 7.  Defendant cites one case that concerns standing and the precise statutory violation at issue in this case: *Rosario v. Icon Burger Acquisition LLC*, No. 21-CV-4313, 2022 WL 198503, *3 (E.D.N.Y. Jan. 21, 2022).  *See* Dkt. No. 15 at 7-8.

In *Rosario*, the court noted that "the late payment of wages can constitute a concrete harm sufficient to confer standing on a plaintiff who seeks relief under Sections 191 and 198 of the NYLL." *Rosario*, 2022 WL 198503, at *3. However, the court concluded that the "[p]laintiff's barebones Amended Complaint contains no facts from which the Court could plausibly conclude that [the p]laintiff actually suffered the sort of harm that would entitle him to relief." *Id.* The court continued, stating that "[t]he Amended Complaint simply alleges that '[the d]efendant failed to pay [the p]laintiff and the Class on a timely basis as required by the NYLL,' so [the p]laintiff and the class are entitled to damages." *Id.* (quotation omitted). The court determined that "[t]his is insufficient under TransUnion and Maddox." *Id.* (collecting cases). The *Rosario* court agreed that "'[m]oney later is not the same as money now.' But . . . absent factual allegations that the plaintiff forewent the opportunity to invest or otherwise use the money to which he was legally entitled, he cannot plausibly claim he suffered a harm sufficiently concrete to establish Article III standing." *Id.* (quoting *Stephens v. U.S. Airways Grp., Inc.*, 644 F.3d 437, 442 (D.C. Cir. 2011) (Kavanaugh, J., concurring)).

Defendant does not acknowledge that eleven months later, the *Rosario* court, following the plaintiffs' amendment of their complaint, determined that the plaintiffs had standing on their section 191 claim. *See Rosario v. Icon Burger Acquisition LLC*, No. 21-CV-4313, 2022 WL 17553319, *4 (E.D.N.Y. Dec. 9, 2022) (quotations omitted) ("[T]he Court agrees with other courts in this Circuit that it is sufficient for [the p]laintiffs to affirmatively plead injury through the allegation that they were 'temporarily deprived of money owed,' and, consequently, were unable to 'invest, earn interest on, or otherwise use' money that was rightfully theirs").

7

Plaintiff lists numerous cases to support standing. *See* Dkt. No. 28 at 3-5. Plaintiff relies on *Levy v. Endeavor Air Inc.*, 638 F. Supp. 3d 324, 329 (E.D.N.Y. 2022). *See id.* at 3-4. There, the court distinguished *Maddox* and concluded that

> [u]nlike in *Maddox*, where the harm pleaded as resulting from the statutory violations was at best hypothetical, the harm plausibly pleaded here by [the] plaintiffs as resulting from the violation of § 191 is actualized. To put it differently, the loss of the time value of the money owed to [a] plaintiff is not a harm that might occur, but one that has occurred; it is not a harm that might materialize, but one that has materialized. At its essence, [the] defendant's attack is not one of law, but of economics. [The defendant] refuses to recognize here what it must certainly recognize in the handling of its own business affairs: there is a time value to the possession of money. [The p]laintiffs need not, as [the] defendant suggests, spell out how the time value of money, as an economic theory, applies to their case. It does apply; the delay in payment alleged, due to [the] defendant's unlawful rate-of-payment practices, necessarily means that plaintiffs were forced to wait to receive money that, as compared with when they should have received it, was, when they did receive it, worth less.

*Id.* at 329-30. The court concluded that the plaintiffs did not "need [to] describe how they would have spent their wages had they been timely received. . . . The delay in receiving wages stripped [the] plaintiffs of the opportunity to use funds to which they were legally entitled." *Id.* at 130. "Certainly, in accordance with the Supreme Court's instructions in *TransUnion*, this is an injury sufficiently analogous to harms traditionally recognized at common law." *Id.*

Within the past year, the undersigned has twice rejected Defendant's precise standing argument. *See Petrosino v. Fastenal Co.*, No. 1:22-CV-705, 2023 WL 3496362, *3-4 (N.D.N.Y. May 17, 2023); *Shugars v. Masonite Corp.*, No. 3:22-CV-1237, 2023 WL 7280902, *5 (N.D.N.Y.

Nov. 3, 2023).[1] Another judge in this District has done the same. *See Flores v. Cargill Inc.*, No. 1:23-CV-38, 2023 WL 4199252, *3 (N.D.N.Y. June 27, 2023).

In those cases, this Court relied on *Levy* and "the line of federal district court cases . . . which hold that the delayed payment of wages in violation of NYLL § 191 is a concrete harm and injury in fact sufficient for Article III standing." *Petrosino*, 2023 WL 3496362, at *3; *see also Shugars*, 2023 WL 7280902, at *4; *Flores*, 2023 WL 4199252, at *2.

Here, Plaintiff alleged that "she was temporarily deprived of money owed to her, and she could not invest, earn interest on, or otherwise use these monies that were rightfully hers. Accordingly, every day that said money was not paid to her in a timely fashion, she lost the time value of that money." Dkt. No. 1 at ¶ 11.

Following the plethora cases to conclude as such, the Court finds that Plaintiff's allegation is sufficient to state an injury and establish Article III standing. *See Shugars*, 2023 WL 7280902, at *5; *Petrosino*, 2023 WL 3496362, at *3-4; *Freeland v. Findlay's Tall Timbers Distribution Ctr., LLC*, No. 22-CV-6415, 2023 WL 4457911, *6-7 (W.D.N.Y. July 11, 2023) (collecting cases). Thus, Defendant's motion is denied on this issue.[2]

**C.    Private Right of Action**

Defendant argues that there is no express or implied private right of action under section 191 for untimely wage payments. *See* Dkt. No. 15 at 10; *see also* Dkt. No. 31 at 4-6.

---

[1] Defense counsel in those two cases is from the same law firm as in this case, and was, in one instance, the same attorney. *See Shugars*, 2023 WL 7280902, at *1.

[2] To the extent that Defendant contends that Plaintiff is not entitled to liquidated damages, the Court finds that this argument is not properly considered on a motion to dismiss. *See Shugars*, 2023 WL 7280902, at *5; *Petrosino*, 2023 WL 3496362, at *5; *Rodrigue v. Lowe's Home Ctrs., LLC*, No. 20-CV-1127, 2021 WL 3848268, *6 (E.D.N.Y. Aug. 27, 2021).

"Whether NYLL § 191 includes an express or implied private right of action is a question of state law." *Shugars*, 2023 WL 7280902, at *5. "'When deciding a question of state law' like this one, federal courts 'look to the state's decisional law, as well as to its constitution and statutes.'" *Id.* (quoting *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020). "Absent a clear directive from a state's highest court, a federal court must 'predict how the state's highest court would resolve the uncertainty or ambiguity.'" *Id.* (quotation omitted); *see also Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116-17 (2d Cir. 2000). "In doing so, the federal court 'is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion.'" *Shugars*, 2023 WL 7280902, at *5 (quoting *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010)). The Court may "look to the language of other jurisdictions on the same issue and other sources the state's highest court might rely upon" in order to "undertake the imprecise but necessary task of predicting on a reasonable basis how the New York Court of Appeals would rule." *DiBella v. Hopkins*, 403 F.3d 102, 112-13 (2d Cir. 2005).

At the time of this Court's decision in *Shugars*, there was no New York Court of Appeals decision and one Appellate Division decision addressing the issue of whether section 191 provided a private cause of action. *See Shugars*, 2023 WL 7280902, at *6 (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144 (1st Dep't 2019)). The First Department held in *Vega* that "Labor Law § 198(1-a) *expressly* provides a private right of action for a violation of Labor Law § 191." *Vega*, 175 A.D.3d at 1446 (emphasis added). This is because "the term underpayment encompasses the instances where an employer violates the frequency requirements of section 191(1)(a) but pays all wages due before the commencement of an action" and "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer

10

pays less than what is required." *Id.* at 1445.  The *Vega* court also concluded section 191 provides for an *implied* right of action because the plaintiff was "one of the class for whose particular benefit the statute was enacted, the recognition of a private right of action would promote the legislative purpose of the statute and the creation of such a right would be consistent with the legislative scheme." *Id.* at 1446.  It explained that "the legislative purpose of section 191 . . . is to protect workers who are generally 'dependent upon their wages for sustenance' . . . and section 198 . . . was enacted to deter abuses and violations of the labor laws." *Id.* (quotations omitted).

This Court explained that it was "bound to apply the law as interpreted by the First Department unless there is 'persuasive evidence' that the New York Court of Appeals 'would reach a different conclusion.'" *Shugars*, 2023 WL 7280902, at *6 (quoting *Muhammad*, 595 F.3d at 432).  The Court noted that "every federal court in the Second Circuit to address the issue has applied *Vega*'s holding finding an express private right of action under Sections 191 and 198(1-a)." *Id.* (collecting cases).  Thus, the Court "join[ed] the chorus of opinions throughout the Second Circuit finding that Plaintiffs have a private right of action (either express or implied) for late payment of wages under the NYLL." *Id.* at *7; *see also Ramirez v. Tifaret Disc., Inc.*, No. 22-CV-10489, 2023 WL 6318616, *8 (S.D.N.Y. Sept. 28, 2023) (quoting *Harris v. Old Navy, LLC*, No. 21-CV-9946, 2022 WL 16941712, *9 (S.D.N.Y. Nov. 15, 2022)) (collecting cases) ("'[S]ince *Vega*, every court in [the Second] Circuit to consider that decision appears to have followed its construction of the New York Labor Law'").

Approximately two months after this Court decided *Shugars*, the Second Department weighed in on the issue. *See Grant v. Glob. Aircraft Dispatch, Inc.*, 223 A.D.3d 712, —, 2024 WL 172900 (2d Dep't 2024).  The Second Department "respectfully disagree[d] with the reasoning of *Vega* and decline[d] to follow it." *Id.* at *1.  The Second Department held "that

11

Labor Law § 198 does not expressly provide for a private right of action to recover liquidated damages, prejudgment interest, and attorneys' fees where a manual worker is paid all of his or her wages biweekly, rather than weekly, in violation of Labor Law § 191(1)(a)" nor does it provide for an implied right of action. *Id.* at *4. It concluded that "[t]he plain language of Labor Law § 198(1–a) supports the conclusion that this statute is addressed to nonpayment and underpayment of wages, as distinct from the frequency of payment . . . and we do not agree that payment of full wages on the regular biweekly payday constitutes nonpayment or underpayment." *Id.* at *1-2.

In concluding as such, the Second Department discussed the New York Court of Appeals decision *Konkur v. Utica Academy of Science Charter School*, 38 N.Y.3d 38 (2022), "in which it declined to conclude that an employer's violation of the prohibition against requesting or demanding a 'return, donation or contribution' of any part of an employees' wages (*i.e.*, kickbacks) (Labor Law § 198–b[2]) constituted a wage claim within the meaning of Labor Law § 198(1–a)." *Id*. at *3. The *Grant* court summarized the *Konkur* decision by stating that, "the mere fact that a violation of the Labor Law had the effect of reducing employees' wages (even permanently) did not bring that Labor Law violation under the auspices of Labor Law § 198(1–a), which covers nonpayment and partial payment of wages." *Id.* (footnote omitted).

The decision in *Grant* includes a concurrence in part and dissent in part in which one of the four panel members agreed with *Vega*'s conclusion that "Labor Law § 198(1–a) expressly provides a private right of action for a violation of Labor Law § 191, which right may also be implied." *Id.* at *5. The dissent stated that "the late payment of wages is tantamount to a

12

nonpayment or underpayment of wages, which permits recovery under Labor Law § 198(1–a)." *Id.*[3]

Since the filing of *Grant*, there have been four federal district court opinions issued that address this split in authority. *See Gamboa, et al., v. Regeneron Pharmaceuticals, Inc.*, No. 22-CV-10605, 2024 WL 815253, *1 (S.D.N.Y. Feb. 27, 2024) (continuing to follow Vega and holing that section 198(1-a) provides a private right of action for violations of section 191(1)(a)); *Zachary v. BG Retail, LLC*, No. 22-CV-10521, 2024 WL 554174, *7 (S.D.N.Y. Feb. 12, 2024) (same); *Sarmiento, et al. v. Flagge Contracting Inc., et al.*, No. 22-CV-9718, 2024 WL 806137, *1 (S.D.N.Y. Feb. 27, 2024) (same); *Galante v. Watermark Servs. IV, LLC*, No. 23-CV-6227, 2024 WL 989704, *7 (W.D.N.Y. Mar. 7, 2024) (agreeing with the Second Department's decision in *Grant* and holding that section 198(1-a) does not provide a private right of action, either express or implied, for violations of section 191(1)(a)).[4]

The Court finds the analysis and conclusion in *Zachary* persuasive. As the *Zachary* court explained, "[a]lthough Section 198 does not explicitly reference late wage payments, its text

---

[3] In an earlier decision, the Appellate Term, Second Department, concluded that "[a]s this court is bound by principles of *stare decisis* to follow precedents set by the Appellate Division of another department until the Court of Appeals or the Appellate Division, Second Department, pronounces a contrary rule . . . the decision of the Appellate Division, First Department, in . . . *Vega* . . . is controlling on the issue of whether plaintiff stated a cause of action for damages, pursuant to Labor Law §§ 191(1)(a) and 198(1-a). Thus, the Suffolk County Court erred in dismissing [the] plaintiff's first cause of action." *Phillips v. Max Finkelstein, Inc.*, 73 Misc. 3d 1, 4 (N.Y. App. Term. 2021); *see also Mabe v. Wal-Mart Assocs., Inc.*, No. 1:20-CV-00591, 2022 WL 874311, at *3 (N.D.N.Y. Mar. 24, 2022) (citing *Phillips* and stating that "[c]ontrary to [the d]efendant's previous argument, New York's appellate divisions are not divided as to the application of *Vega*"). The *Grant* court did not discuss *Phillips*. *See Grant*, 2024 WL 172900, at *1-4.

[4] In a separate case, the court noted that the plaintiff in *Grant* filed an application for the Second Department seeking leave to appeal to the Court of Appeals. *See Urena v. Sonder USA, Inc.*, No. 22-CV-7736, 2024 WL 989593, *4 (S.D.N.Y. Mar. 7, 2024). Based on this filing, the court directed the parties to show cause why the court should not stay the case, "pending possible New York Court of Appeals review of the decision in *Grant* . . . ." *Id.*

13

authorizes employees to bring 'wage claims' for 'underpayment[s]' violative of article 6 of the NYLL, and article 6 includes the pay frequency requirements in Section 191." *Id.* at \*7. Additionally, it noted that "the plain language of Section 191 discredits the Grant court's view that Section 198's enforcement mechanism is not triggered when an employer and manual worker agree to a biweekly payment schedule." *Id.* at \*8. This is because "NYLL Section 191(2) provides that '[n]o employee shall be required as a condition of employment to accept wages at periods other than as provided in this section.'" *Id.* The *Zachary* court also relied on the legislative history of section 198 which noted an intention "to allow employees 'to recover the full amount of any underpayment,'" and "to enhance penalties for wage theft and benefit low-wage workers struggling to support their families." *Id.* (quoting *Grant*, 2024 WL 172900, at \*5). Thus, because "money has a real time value," a late payment is an under payment. *Id.*

The New York Court of Appeals decision in *Konkur* does not alter the Court's agreement with *Zachary*. As the dissent explained in *Grant*, numerous federal district courts have already grappled with *Konkur*'s impact on *Vega*. *See Grant*, 2024 WL 172900, at \*5 (collecting cases). Courts have repeatedly noted that *Konkur* concerned a different provision of the New York Labor Law related to kick backs. *See Macchiavello v. ABB/CON-CISE Optical Grp. LLC*, No. 22-CV-8468, 2023 WL 4625009, \*5 (S.D.N.Y. July 19, 2023) ("[E]ven if the Court of Appeals were to agree with Konkur that an express private right of action is required, Vega's conclusion that a late payment claim meets the express statutory underpayment claim elements could nevertheless survive"). As the *Zachary* court noted:

> in Konkur, the Court of Appeals distinguished the anti-kickback statute, from which a private right could not be inferred, from the "substantive provisions of Labor Law article 6," like Section 191, which "regulates payment of wages by employers and creates reciprocal rights of employees." Konkur, 38 N.Y.3d at 44.

*Zachary*, 2024 WL 554174, at *8; *see also Davis v. Banana Republic LLC*, No. 21-CV-6160, 2023 WL 5969597, *7 (E.D.N.Y. Sept. 14, 2023) ("Though [the d]efendant is correct that the decisions of other district courts within this Circuit are not binding on this Court, it is revealing that not one court has found *Konkur* to present sufficient 'persuasive evidence' to depart from Vega"); *Pozo v. BlueMercury*, Inc., No. 22-CV-7382, 2023 WL 4980217, *4 (S.D.N.Y. Aug. 3, 2023) ("Nothing in *Konkur*, which focused on implied rights of action, constitutes persuasive evidence that the New York Court of Appeals would reject Vega's holding that NYLL § 198(1-a) expressly establishes a private right of action for violations of NYLL § 191"); *Macchiavello*, 2023 WL 4625009, at *5.

In support of its argument that *Vega* was wrongly decided and *Konkur* changes the landscape on this issue, Defendant cites *Georgiou* insofar as that court had "no trouble finding that *Vega*'s alternative holding that there is an implied right of action has been abrogated by *Konkur*." *Georgiou v. Harmon Stores, Inc.*, No. 2:22-CV-02861, 2023 WL 112805, *4 (E.D.N.Y. Jan. 5, 2023); *see* Dkt. No. 15 at 15. Similarly, Defendant cites *Day* which acknowledged that "contrary authority exists, with several state and federal courts doubting, or expressly disagreeing, that NYLL creates a remedy for late, but full, payments of wages." *Day v. Tractor Supply Co.*, No. 22-CV-489, 2022 WL 19078129, *6 (W.D.N.Y 2022). Nevertheless, and unrecognized by Defendant, both of those courts concluded that "[d]espite my doubts about the viability of Vega in light of Konkur, Konkur does not rise to the level of 'persuasive evidence' that the Court of Appeals would reject Vega[,]" *Georgiou*, 2023 WL 112805, at *4, and, "as recognized in *Vega*, that liquidated damages are the appropriate remedy for violations of § 191." *Day*, 2022 WL 19078129, at *7.

15

In a letter providing supplemental authority, Defendant presents one additional case that "noted [] concerns regarding the soundness and correctness of *Vega*," and two transcripts from conferences before a federal district judge in which the judge called the penalties under *Vega* "kooky," "insanely out of proportion" and "draconian."  Dkt. No. 37 at 6; Dkt. No. 37-1 at 3; Dkt. No. 37-2 at 4.

This evidence is not sufficiently "persuasive evidence" to convince the Court that the New York Court of Appeals would reject *Vega*.  *Muhammad*, 595 F.3d at 432.  First and foremost, a judge's commentary on a legal issue during a court conference is neither binding nor persuasive.  Second, although Defendant is correct that there have been cases disagreeing with *Vega*, those cases are far fewer than the cases agreeing with *Vega*.  *See Espinal v. Sephora USA, Inc.*, No. 22-CV-03034, 2022 WL 16973328, *6 (S.D.N.Y. Nov. 16, 2022) ("While we would likely not reach this conclusion ourselves if the issue were presented afresh . . . we feel bound to follow *Vega*'s holding on this point"); *Harris v. Old Navy, LLC*, No. 21-CV-9946, 2022 WL 16941712, *7 (S.D.N.Y. Nov. 15, 2022) (stating the same by the same judge); *Georgiou*, 2023 WL 112805, at *6.

Further, the *Grant* court noted that "th[e] legislative history reveals that Labor Law § 198(1-a) was aimed at remedying *employers' failure to pay the amount of wages required by contract or law*."  *Grant*, 2024 WL 172900, at *4 (emphasis added).  It explained that "[t]here is no reference in the legislative history of Labor Law § 198 to the frequency or timing of wage payments, and nothing to suggest that the statute was meant to address circumstances in which an employer pays full wages pursuant to an agreed-upon, biweekly pay schedule that nevertheless does not conform to the frequency of payments provision of law."  *Id.*

16

It is true that section 198 does not discuss the frequency of payments. However, section 198 provides a private right of action for "wage claims based upon violations of one or more of the substantive provisions of Labor Law article 6" "[a]nd it is Labor Law § 191 that 'generally regulates payment of wages by employers and creates reciprocal rights of employees.'" *Konkur*, 38 N.Y.3d at 43-44 (quotations omitted). Section 191(1)(a) requires, by law, that employers pay a manual worker "weekly and not later than seven calendar days after the end of the week in which the wages are earned." If that is not done, then the employer "fail[ed]to pay the amount of wages required by contract or law." *Grant*, 2024 WL 172900, at *4. Although § 198(1-a) does not reference "the frequency or timing of wage payments," *id.*, it does reference "underpayment[s]." N.Y. Lab. L. § 198(1-a). Merriam-Webster defines "under" as "in or into a position below or beneath something" or "below some quantity, level, or limit." Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/under (last visited Feb. 26, 2024). If an employee is not paid any money on the date required by law, he or she was paid below the required amount and was, therefore, underpaid.

Of note, *Vega* was decided September 10, 2019, and *Konkur* was decided February 10, 2022. Although *Konkur* concerned Labor Law § 198–b, the Court of Appeals discussed Labor Law article 6, specifically Labor Law § 191, but did not address or overrule *Vega*. The Court of Appeals' silence concerning *Vega* is not conclusive evidence that it will never disagree with *Vega* in the future. However, the Court of Appeals explicitly noted that "[w]here the legislature intended for an article 6 provision to be enforced individually, it expressly provided a private right of action" "[a]nd it is Labor Law § 191 that 'generally regulates payment of wages by employers and creates reciprocal rights of employees.'" *Konkur*, 38 N.Y.3d at 44 (quotations omitted). The Court of Appeals could have discussed *Vega* and its holding of a private right of

action under section 191, but it did not. *Mabe*, 2022 WL 874311, at *6 ("Although the *Konkur* Court held that an employer-required kickback claim under Section 198–b did not qualify as a wage claim under Section 198, it did not address whether the late payment of wages is an underpayment of wages and thus a wage claim privately actionable under NYLL § 198(1-a) as found by *Vega*").

The Second Department's decision in *Grant* provides evidence that causes the Court to take greater pause in answering the question of whether the Court of Appeals would disagree with *Vega*. However, based on the reasoning set forth by the vast majority of Courts to continue to follow *Vega*, even in light of *Konkur*, and the dissent in *Grant*, the Court concludes that the *Grant* majority and the few district court cases questioning *Vega* are not persuasive enough evidence to reject the present coalition of cases upholding *Vega*. The Court predicts that based on the current legal landscape, the New York Court of Appeals would accept *Vega*. Thus, Defendant's motion is denied because a private right of action (either express or implied) has been recognized in the precise circumstances presented in Plaintiff's complaint.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. Nos. 14, 15) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 14, 2024
       Albany, New York

Mae A. D'Agostino
U.S. District Judge